IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-02063-WDM-CBS

PINNACLE REALTY MANAGEMENT COMPANY,

    Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

    Defendant.

## ORDER ON MOTIONS FOR DETERMINATION OF CHOICE OF LAW

Miller, J.

    This matter is before me on the Defendant's Motion for Determination of Choice of Law (doc no 16), filed by Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and on the Cross-Motion for Determination of Choice of Law (doc no 22), filed by Plaintiff Pinnacle Realty Management Company ("Pinnacle").  The parties seek a determination of whether the substantive laws of Washington, Colorado, Missouri, or the laws of some other state, apply to this insurance coverage dispute.  I have reviewed the parties' written arguments and find oral argument is not required.  For the reasons set forth below, I conclude that Washington law should govern this action.

### Background

    Pinnacle is a Delaware corporation with its principal place of business in Seattle, Washington.  Its business is property management, managing buildings located around

the United States.  One such property was an apartment complex owned by the St. Louis Housing Authority ("Housing Authority") in Missouri.  On June 12, 2000, a young boy named Terrance Hill fell to his death from an upper floor window.  His mother filed a wrongful death suit (the "Missouri Lawsuit") against Pinnacle and the Housing Authority, alleging that the defendants had failed to place safety devices in windows despite knowledge of the need for them.

National Union is a Pennsylvania corporation with its principal place of business in New York, New York.  It insured Pinnacle under an umbrella policy, which was bound in April 2000.  The umbrella policy was obtained after Pinnacle's broker, Lockton Companies, Inc., and its subsidiary, Lockton Companies of Colorado, Inc. ("Lockton Denver") made a presentation to Pinnacle's controllers in Seattle.  After Lockton prepared a proposal, which included a National Union umbrella policy, Pinnacle's president in Seattle authorized the purchase of the policies and coverage suggested by Lockton Denver.  Lockton Denver sent the umbrella policy application to a Denver office of American International Group ("AIG"), which is a parent company of National Union.  Quotes and correspondence were exchanged between the Denver AIG office and Lockton Denver.  National Union then issued the Notice of Policy Premium and the Policy, sending both to Lockton Denver's office.  The policy covers numerous properties and names as insured a number of entities aside from Pinnacle.  Pinnacle notified National Union of the Missouri Lawsuit after Pinnacle was served with the summons and complaint.

In February 2003, the jury in the Missouri Lawsuit found in favor of the plaintiff

and awarded $1.2 million in compensatory damages attributable to Pinnacle (the remaining compensatory damages were charged against the Housing Authority) and $16 million in punitive damages, chargeable entirely to Pinnacle.  Both defendants appealed the verdict.  Pinnacle ultimately settled with the plaintiff for a total of $4.48 million, partly paid up front and the remainder paid over time with interest on a promissory note.  As part of the settlement, Pinnacle allowed a consent judgment to be entered against it.  There was some additional litigation involving other primary and excess insurance companies, pursuant to which apportionment issues were determined.[1]  In the course of this litigation, the trial court in Missouri determined that Missouri law precluded insurance coverage for punitive damages.  All amounts attributable to compensatory damages have been satisfied by other insurers.  National Union denied coverage for the judgment and settlement.

     Pinnacle initiated this action in the United States District Court for the Western District of Washington, alleging that National Union had breached its contract with Pinnacle and seeking a declaration of coverage for losses arising out of the Missouri Lawsuit.  Defendant moved to transfer the case to the District of Colorado pursuant to 28 U.S.C. sec. 1404(a).  The presiding judge in Washington granted the motion, concluding that fairness and convenience favored Colorado as the forum, as the insurance contract had been negotiated in Colorado and many witnesses were present there.  After the case was transferred, the parties filed these motions seeking a determination of which state's law should apply.

---

[1] It does not appear that National Union participated in this litigation.

Discussion

The policy at issue does not contain a choice of law provision. In its motion, National Union argues that Colorado law or Missouri law should apply to this dispute. Pinnacle contends that Washington law is appropriate. There is an actual conflict between the laws of these states. Under Colorado law, public policy prohibits insurance coverage for punitive damages. *Lira v. Shelter Ins. Co.*, 913 P.2d 514, 517 (Colo. 1996). Missouri applies similar principles. *Schnuck Markets, Inc. v. Transamerica Ins., Co.*, 652 S.W.2d 206, 209 (Mo. Ct. App. 1983). However, Washington courts have declined to take this position; punitive damages are considered a disfavored penalty which a party should be able to insure against. *Fluke Corp. v. Hartford Accident & Indem. Co.*, 34 P.3d 809, 814-15 (Wash. 2001).[2]

Because this case was transferred from Washington, I must apply the choice of law rules of the transferring court. *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996). Washington has adopted the principles of the Restatement (Second) of Conflict of Laws (1971) ("Restatement"). *Fluke*, 34 P.3d at 815. The approach taken by the Restatement is to determine the state with the "most significant relationship" to the dispute. *Id.* (citing Restatement § 188). This is determined in light of the underlying principles set out in section 6(2) of the

---

[2]Pinnacle argues that since this case concerns an unallocated settlement amount, not the punitive damages awarded by the jury, there is no conflict of laws and so no analysis is necessary. This argument is unavailing. Clearly there is a conflict of laws regarding the insurability of losses arising from a punitive damages award; however, the application of the law to these facts, and the legal effect of the settlement agreement, are different matters not at issue in this motion.

Restatement, including the following:

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability and uniformity of result; and

(g) ease in the determination and application of the law to be applied.

Section 188(2) of the Restatement sets forth five relevant contacts to be considered in determining the applicable law in a contract dispute: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; (e) the domicil, residence, nationality, place of incorporation and place of business of the parties. However, the Washington courts have made clear that this analysis is not simply a matter of "counting contacts;" the relative policies and interests of the states in the subject matter should be considered, as well as the relative importance of each contact with respect to the particular issue. *Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 701 P.2d 806, 808-9 (Wash. App. 1985).

National Union first argues that the Washington court, in considering National Union's motion to transfer venue, has already considered the choice of law issue and determined that the most substantial contacts occurred in Colorado. I disagree. A

choice of law analysis is distinct from that used in considering a convenience transfer of venue, although some factors overlap. I decline to consider the transfer order dispositive of this issue.

National Union next urges that since Pinnacle's broker is located in Denver, all negotiation, communication, and delivery of the insurance contract occurred in Denver, and the Denver AIG office did the underwriting, the state with the most significant relationship with the coverage dispute is Colorado. In response, Pinnacle argues that the expectations of the parties at the time of contracting is the predominant concern, that Pinnacle had no expectation that its insurance disputes would be governed by Colorado law, that the place of performance is Washington (i.e., where benefits would be paid if National Union performed), and that its residency in Washington is a significant factor.

I disagree with National Union that the policy paperwork and ministerial communications conducted in Colorado constitute a "significant relationship" to the dispute. As noted by one Washington court in considering similar issues, "[t]he ministerial acts of negotiating and executing the contracts do not amount to significant contacts" where none of the parties were residents of that forum, the injuries occurred elsewhere, and the policy covered multiple risks in multiple locations. *Canron, Inc. v. Federal Ins. Co.*, 918 P.2d 937, 944 (Wash. App. 1996). In other cases where a Washington court found that the place of contracting was an important factor, there were also numerous other contacts that supported using the law of that particular state. *See, e.g., Dairyland*, 701 P.2d at 809 (application of Idaho law was appropriate where

6

insurance policy was issued in Idaho to Idaho resident, who paid premiums in Idaho and where risk was primarily in Idaho; only connection to Washington was accident that gave rise to insured's liability); *West American Ins. Co. v. MacDonald*, 841 P.2d 1313, 1317 (Wash. App. 1992) (California resident had entered into insurance policy in California, policy referred to California law, insured vehicle licensed and registered in California, driver was driving with California driver's license; only connection to Washington was that automobile accident occurred in Washington). Here, the formation of the contract was the result of a routine exchange of boilerplate paperwork and information involving no real negotiation or substantive communications. The fact that this occurred in Colorado, in the absence of any other meaningful connections to the state, does not weigh strongly in finding that Colorado has a significant relationship to the dispute.

Considering the other factors of section 188(2), I agree with Pinnacle that Washington would be the place of performance, as it is where payment by National Union pursuant to the policy would be made. The location of the subject matter of the contract is neutral, as the risks were located in a variety of states. National Union cites *Erickson v. Sentry Life Ins. Co.*, 719 P.2d 160, 162 (Wash. App. 1986) for the proposition that where a policy insures a multi-state risk, the law of the state where the master policy is issued controls. However, *Erickson* is inapplicable as it concerns group life insurance and section 192 of the Restatement, which is not the circumstance here. Rather, with a liability policy insuring risks in different locations, it appears the courts in Washington would consider the location of the insured risk to be in Missouri

but would not give this great weight. *See Canron*, 918 P.2d at 944 (citing but not applying section 193 of the Restatement, which addresses the location of a risk with respect to fire and casualty insurance policies, including multi-state risks). Finally, the residence of the parties is important, most significantly Washington, as there does not seem to be any connection between this conflict and the states of New York, Delaware, or Pennsylvania.[3] I do not consider the location of the brokers to be more important than that of the parties.

     I analyze these contacts in light of the factors emphasized in section 6(2). There is little evidence of the parties' expectations at the time that the policy was negotiated or bound. However, I find significant that the policy contains only one state-specific endorsement. Endorsement 2 of the policy is titled "Washington Amendatory Endorsement" and modifies the contract to track Washington law regarding cancellation. This supports Pinnacle's view that the parties expected Washington law to apply. In addition, I note that while Washington may have a strong interest in extending the protections of its own laws to its residents, Colorado has a much less significant interest in the application of its public policy on punitive damages in a dispute between two non-residents, even if the relevant contract of insurance was formed in Colorado. Finally, using Washington state law, rather than the law of the state in which the insured risk was located (i.e., Missouri and all other states where the

---

[3]National Union makes much of the fact that Pinnacle's Certificate of Authority to transact business in Washington was temporarily revoked due to a failure to pay fees. Since Pinnacle never stopped being a resident of Washington, I give this little weight in the analysis.

properties managed by Pinnacle are located), will advance the interests of uniformity and consistency.

Considering the types of contacts with Colorado and Washington in light of the underlying contract, the nature of the dispute, the reasonable expectations of the parties, and the relative interests of Colorado and Washington in this dispute, I conclude that Washington has the most significant relationship with this matter.

Accordingly, it is ordered:

1. Defendant's Motion for Determination of Choice of Law (doc no 16) is denied.

2. The Cross-Motion for Determination of Choice of Law (doc no 22) is granted.

3. The rights and responsibilities of the parties in connection with the policy in this matter shall be governed by the laws of the State of Washington.

DATED at Denver, Colorado, on July 3, 2007.

                                  BY THE COURT:


                                  s/ Walker D. Miller
                                  United States District Judge